# OLEN TYLER v. THE STATE.

No. 17287.   Delivered March 27, 1935.
Rehearing Denied May 1, 1935.

The opinion states the case.

*Howard H. Dailey,* of Dallas, *E. R. Simmons,* of Teague, and *Reed & Cannon,* of Groesbeck, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment, confinement in the penitentiary for fifteen years.

It was charged in the indictment, in substance, that appellant, with malice aforethought, killed Dudley Williams by shooting him with a gun. The companion case of Chance v. State is found reported in 68 South Western, Second Series, at page 212.*

The questions brought forward by the bills of exception are discussed in this opinion in the order in which they are presented in appellant's brief.

Bills of exception 16 to 20, inclusive, recite that the wife of Buddie Camper was sitting next to appellant in the courtroom during the trial of the case; that when State's witnesses Walter T. McGinnis and Eva Murchison were questioned by State's counsel on their direct examination they were asked if they knew the wife of Buddie Camper, who was sitting by appellant. It is shown in the bills relating to the examination of McGinnis that he answered that he did not "know her personally." In those bills relating to the examination of Eva Murchison it is disclosed that she answered that the young woman sitting by appellant was Buddie Camper's wife. It is further shown in said bills that some of the jurors testified on the motion for a new trial that the jury discussed during their deliberations the fact that another man's wife sat by appellant during the trial, and that his own wife was not present. One of the jurors testified, according to the bills, that it was stated in the juryroom

that it looked bad for another man's wife to sit with appellant during his trial.. The remainder of the recitals in said bills of exception constitute mere grounds of objections to the questions propounded and the answers given by the witnesses, said objections being in effect that the testimony elicited was irrelevant, immaterial, highly prejudicial, and tended to solve no issue in the case. The truth of such objections is not verified. Stated in another way, said bills fail to set out any facts or evidence showing that the objections were founded in fact, and that the grounds thereof were true. Was the testimony shown in said bills irrelevant and immaterial? The bills fail to answer the question. Under an unbroken line of decisions, a mere statement of a ground of objection in a bill of exception is not a certificate of the trial judge that the facts which form the basis of the objection are true, but merely shows that such an objection was made. Branch's Annotated Penal Code, sec. 209; Smith v. State, 4 Texas App., 630; McBroom v. State, 61 S. W., 481; Scott v. State, 120 S. W., 196; Arnold v. State, 168 S. W., 125; Jones v. State, 17 S. W. (2d) 1053; Cochran v. State, 16 S. W. (2d) 1065; O'Rear v. State, 9 S. W. (2d) 333; Fisher v. State, 1 S. W. (2d) 318; Murff v. State, 281 S. W., 1076. Moreover, the certificate of approval of the trial court to a bill of exception cannot be taken as a certificate of the truth of the grounds of objection therein stated. Fields v. State, 252 S. W., 759.

It is shown in bill of exception 7 that witnesses for the State testified that the body of deceased was found on the Fairfield-Young road about 7:30 a. m.; that just prior to the time of the finding of the body of deceased a yellow-wheeled sedan and a black Ford coupe were seen traveling on said road; that appellant and his three companions were arrested about 10 a. m. of the same morning in a yellow-wheeled Plymouth sedan about four or five miles from the place where the body was found; that two or more witnesses testified for the State that the black Ford coupe which was found abandoned some three or four miles from the place where the body of deceased was discovered resembled the one the witnesses had seen on the road shortly prior to the finding of the body of deceased. The county attorney testified said coupe was taken in charge by the officers and delivered to the police department of the city of Dallas; that an examination of said car disclosed that the numbers had been changed; that the car was left in charge of the auto theft department of said city of Dallas. Appellant objected to the testimony to the effect that the coupe had been turned over to the

police department, and that it appeared that the numbers had been changed, on the ground that such testimony was irrelevant, immaterial and highly prejudicial, and constituted an effort on the part of the State to prove that appellant was guilty of the extraneous crime of theft; that it was an attempt to attack the character and reputation of appellant when he had not placed same in issue. It is recited in said bill of exception that appellant did not take the stand and testify; that his reputation had not been placed in issue; that the evidence connecting him with the possession of said coupe was circumstantial. There are several recognized exceptions to the general rule excluding proof of extraneous crimes. For example, when an extraneous crime or other transaction is a part of the res gestae, or tends to show intent when intent is in issue, or tends to connect the accused with the offense for which he is on trial, proof of same is admissible. Branch's Annotated Penal Code, sec. 166; Serrato v. State, 171 S. W., 1142; Hamilton v. State, 24 S. W., 32. The bill of exception fails to set forth any facts negativing the idea that the testimony indicating that the car had been stolen was admissible under one of the recognized exceptions to which reference has been made. Touching the necessity of such a showing, the rule is stated in 4 Tex. Jur., page 338, as follows: "A bill of exception complaining of the admission of evidence over the objection that it related to an extraneous crime, not connected with the one for which the defendant was on trial, must show that the ruling was erroneous and harmful to the appellant. It must show that the testimony complained of actually involved an extraneous crime, and show facts negativing the idea that it was within one of the recognized exceptions to the rule excluding proof of extraneous crimes; hence the bill is insufficient where it does not negative the fact that motive was an issue, or does not show that the proof was not materially related to some issue involved in the case at bar, or was not admissible as a part of the res gestae or part of a system."

In support of the text many authorities are cited, among them being Enix v. State, 16 S. W. (2d) 818; Spillman v. State, 292 S. W., 891; Matthews v. State, 266 S. W., 150; James v. State, 138 S. W., 612. The statement of the grounds of objections cannot be held to support the contention that the proof in question was erroneously received. No facts are set forth in the bill to show that the objections stated therein are founded in fact, and that the grounds of objection are true. We reiterate the rule by quoting from Branch's Annotated Penal Code, sec. 209, as follows: "A mere statement of a ground of objection

in a Bill of Exceptions is not a certificate of the judge that the facts which form the basis of the objection are true; it merely shows that such an objection was made. The defendant should incorporate so much of the evidence in the bill as would verify the truth of his objections."

The bill failing to negative the fact that the testimony was admissible under one of the exceptions referred to, we must indulge the legal presumption that the ruling of the trial court in receiving such testimony was correct. Branch's Annotated Penal Code, sec. 207; Matthews v. State, supra; Buchanan v, State, 298 S. W., 569; Zweig v. State, 171 S. W., 751; Moore v. State, 7 Texas App., 20.

Bills of exception 27 to 30, inclusive, are concerned with appellant's objections to the argument of counsel for the State. We deem it unnecessary to set out the argument. In our opinion none of said bills presents reversible error.

In his motion for a new trial appellant alleged that the jury were guilty of misconduct in discussing his failure to testify and to establish a good reputation; and, further, that new evidence was considered in that it was stated by some of the jurors during the deliberations of the jury that the Young community, in which the offense was alleged to have been committed, was a bootlegging community. Attached to the motion were the affidavits of seven of the jurors to the effect that the matters alleged in the motion were discussed prior to the time that the jury reached a verdict. Oral evidence was heard, all twelve of the jurors testifying before the judge. Practically all the jurors testified that there was no discussion had concerning appellant's failure to testify or of any of the other matters alleged in the motion for a new trial until after they had reached a verdict of guilty, had assessed the punishment at fifteen years in the penitentiary, and had written and prepared said verdict. Some of the jurors testified that appellant's failure to take the stand and testify in his own behalf was mentioned prior to the time that a verdict was reached. One juror testified that he immediately called attention to the fact that it was improper to discuss the failure of defendant to testify, and that he heard no further mention made of such failure until after jury had finally arrived at a verdict. Under the evidence before the trial judge he was warranted in concluding that the statements alleged to constitute misconduct were made after the verdict had been agreed upon and prepared and while the jury were waiting to deliver it to the judge. Under such circumstances, the finding of the trial judge is binding upon this court unless it be

shown that his conclusion was clearly wrong. Huffman v. State, 69 S. W. (2d) 112, and authorities cited. In Williams v. State, 279 S. W., 462, Judge Lattimore, speaking for this court, used language as follows: "If there was a conflict in the testimony of the jurors as to whether the statements were made before or after the jury agreed on a verdict of guilty, the settlement of this conflict would be a matter for the trial judge."

We quote further from the Williams Case: "Matters of this character are peculiarly within the discretion of the trial court, and this court will not overturn the action of the trial court unless it plainly appears that such discretion has been abused."

Bill of exception No. 2 is concerned with the refusal of the court to place the jurors under the rule when they were called to testify on the motion for a new trial concerning the alleged misconduct hereinbefore mentioned. It is shown in the bill that the jurors were permitted to remain in the courtroom in a body while the testimony on the motion was being taken, and that said jurors conversed freely with each other during the hearing. We think the holding in Williams v. State, supra, militates against the conclusion that the bill reflects reversible error. We quote from the opinion as follows:

"There is a bill of exceptions complaining of the refusal of the court to retire from the courtroom, while jurors were being examined upon his motion, certain other jurors who had been summoned as witnesses, who were later placed upon the witness stand; it being insisted that the examination of the jurors first placed on the stand was of such nature as might influence those used later against the defendant's contention. We see no complaint in this bill of exceptions which presents any matter of possible substantial injury to the appellant. The matter was one within the discretion of the trial court."

Bill of exception No. 9 presents the following occurrence: Homer Robinson, a witness for the State, who was a deputy sheriff at the time of the homicide, testified, over appellant's objection, that when he arrested appellant, Carl Chance, Clarence Chance and Lonnie Sykes and brought them to jail he asked them their names and that appellant told him his name was James Watson. Bill of exception No. 11 recites that the district clerk testified, over appellant's objection, that appellant filed an application in the district court of Freestone County for a writ of habeas corpus three or four days after the alleged homicide, in which he stated that his name was James Watson. It is further recited in the bill that the clerk testified that at a

hearing under the habeas corpus proceeding the judgment recited that Olen Tyler (appellant) and James Watson, who was mentioned in the application, were the same person. It is shown in bill of exception No. 12 that the State introduced in evidence the application by appellant for a writ of habeas corpus. Said application, as shown in the bill, recites appellant's name as James Watson. The application was signed and sworn to by appellant's attorney. Bill of exception 13 sets forth the fact that the State introduced in evidence, over appellant's objection, the order of the court granting the writ of habeas corpus, appellant's name therein being shown as James Watson. Bill of exception No. 14 shows the order of the court in the habeas corpus proceeding granting appellant bail. It is recited in said order that Olen Tyler (appellant) is the same person as James Watson mentioned in the application.

It is shown on page 167 of the statement of facts that appellant's counsel elicited from the witness Homer Robinson that Mr. Dailey, who was appellant's attorney in the habeas corpus proceeding, stated to the judge at the time the order was entered granting appellant bail that appellant's name was not James Watson but his true name was Olen Tyler. Moreover, it is disclosed by the statement of facts that the same witness testified, in response to questions by the State, without objection on the part of appellant, as follows: "I was present when the habeas corpus proceeding was held and recall that Mr. Bond, county attorney, suggested that Olen Tyler's name was not James Watson, and at that time Mr. Dailey (appellant's counsel) arose and said they would admit that James Watson's true name was Olen Tyler. I recall that." We take it that this testimony clearly showed that appellant was going under the assumed name of James Watson. Hence it was substantially the same as the testimony of the arresting officer, which was to the effect that appellant told him his name was James Watson. If in this view we are correct, then the rule laid down in Wagner v. State, 109 S. W., 169, and applied in many subsequent cases, is applicable. We quote from Wagner's Case: "It is well settled in this state that the erroneous admission of testimony is not cause for reversal, if the same fact is proven by other testimony not objected to."

We are constrained to hold that the record fails to present reversible error.

The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

## ON MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—In the motion for rehearing we have been referred to no matters in addition to those heretofore presented and passed upon in the original hearing. Our re-examination of the record in the light of the evidence, together with the argument and citation of authorities embraced in the appellant's briefs, leads us to the conclusion that the disposition heretofore made of the appeal was the proper one.

As noted in the original opinion, the facts and legal propositions appearing in the companion case of Chance v. State, 68 S. W. (2d) 212,* which was affirmed, are quite similar to those upon which the present appeal is based.

The motion for rehearing is overruled.

*Overruled.*

*(125 Texas Crim. Rep., 318.)